**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:19-CV-20204**

JANE DOE, by and through
her mother and next friend, Mary Doe,

      Plaintiff,

v.

THE SCHOOL BOARD OF MIAMI-DADE COUNTY,
and SUPERINTENDANT ALBERTO CARVALHO,

      Defendants.
_____/

**COMPLAINT AND JURY DEMAND**

Plaintiff, Jane Doe (Jane) [1], by her mother and next friend Mary Doe, through the

undersigned counsel, sues Defendants the School Board of Miami-Dade County ("School Board")

and Superintendent Alberto Carvalho ("Carvalho") and states:

**INTRODUCTION**

1.     Jane was a 14-year-old female student enrolled at Miami Carol City High School

("Carol City"), when she was subjected to repeated bullying behavior that constituted sexual

harassment, including three sexual assaults, from October 24, 2017 to November 6, 2017, by

different older male peers.

2.     When Jane and her friends reported the sexual harassment, including the assaults,

to multiple School Board and school district ("School District") [2] employees, including Carol

---

[1] "Jane Doe" has been substituted for Plaintiff's name in this complaint to protect her identify. Plaintiff was a minor at the time of the sexual assaults and aftermath which form the basis of this complaint.
[2] The Miami Dade Public School District is a unit for the control, organization and administration by Defendant School Board of all public schools within Miami-Dade County. Fla. Stat. § 1001.30. The School District's governing body is the School Board. Fla. Stat. § 1001.40.

City's Principal, Vice Principal, Assistant Principals ("School Officials"), a school resource officer, at least two teachers, and at least two counselors, on November 7, 2017, instead of coming to her aid, the School District employees failed to adequately and equitably respond and investigate the allegations, engaged in a cover-up of the sexual assaults, coerced Jane to recant her written statement, and suspended her for "sexual misconduct." In their wholly unreasonable response to the sexual harassment experienced by Jane, School Officials and District employees also violated numerous School Board policies regarding the safety and education of students committed to their care.

3.      School Officials and the resource officer failed to refer the allegations to a law enforcement agency as required under Florida law and School Board policies.  When the trauma from the harassment and fear of the perpetrators led to Jane repeatedly missing school, School Officials and Defendants ignored these absences for over three months and failed to provide her with any academic instruction, referral for counseling, or steps to ensure her safety in school, as she sat home isolated and afraid to return to school.  Jane, a conscientious and ambitious student, now has a full academic quarter of failing grades on her high school transcript.  The record of the suspension imposed by School Officials and Defendants when she reported the sexual assaults and other bullying behavior constituting sexual harassment, and her failing grades that academic quarter, have already disqualified Jane from consideration for certain educational opportunities and have impeded her ability to achieve her future academic goals.

4.      The sexual harassment, including multiple sexual assaults, combined with Defendant School Board's deliberate indifference towards the sexual harassment and retaliation against Jane, has harmed her educationally, traumatized her emotionally and psychologically, and

caused damage to her reputation and standing in her community, as well as exposing her to the risk of additional bullying in the form of sexual harassment.

5.      Defendants have a custom of failing to adequately train employees to recognize, prevent, and address sexual harassment, including sexual assault, which resulted in the deprivation of Jane's constitutional, statutory, and common-law rights.

6.      Defendant School Board's actions deprived Jane of equal access to educational opportunities in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). Defendant School Board also violated Jane's rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, as well as state tort laws.

7.      Jane seeks injunctive relief and monetary damages, attorneys' fees, costs.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1334 because this is a civil action arising under the Constitution and the laws of the United States. Specifically, Jane asserts claims under Title IX of the Education Amendments of 1972, 20 U.S.C § 1681 *et seq.*, and the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over the supplemental claims arising under Florida law pursuant to 28 U.S.C. § 1367(a).

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

10.      Jane is now a fifteen-year-old female who resides with her mother, Mary Doe, and two younger siblings in Miami-Dade County, Florida. At all relevant times Jane was enrolled as a high school student at Carol City in the School District.

11.     As the body corporate for the School District, Defendant School Board is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a).

12.     At all relevant times, Defendant Carvalho was the Superintendent of the School District and charged with the administration and management of all District schools, and with the supervision of instruction, as the secretary and executive officer of the School Board.  Fla. Stat. § 1001.32.

13.     At all relevant times, Defendant Carvalho was an employee of the School Board, acting or failing to act within the scope, power, course, and authority of his employment.

14.     At all relevant times, Defendant School Board and Defendant Carvalho were responsible for providing training to School District employees, including the School Officials and resource officers, related to the implementation of the Defendant School Board's policies and procedures on bullying and discrimination, including sexual harassment, in accordance with state and federal law.

## **FACTUAL ASSERTIONS**

### *Jane Experienced Multiple Incidents of Sexual Harassment, Including Sexual Assault, by Several Carol City Students in Fall 2017*

15.     From October 2017 through November 2017, Jane suffered multiple incidents of bullying behavior constituting sexual harassment, including sexual assault, at Carol City by other students as detailed below.

16.     On or about the morning of October 17, 2017, as Jane was walking out of the girl's bathroom, an older male student named A.C. asked Jane to go into the boys' bathroom with him. Assuming that he wanted to engage in sexual activity with her, Jane repeatedly said "no."

4

<u>October 24, 2017 – Sexual Assault by A.C.</u>

17.     During lunchtime at Carol City on or about October 24, 2017, A.C. renewed his request that she go into the bathroom with him, grabbed and pulled Jane into the boys' bathroom, locked her into a stall with him, and sexually assaulted her by anal penetration. After he assaulted her, he left her alone in the boys' bathroom. Jane was hurt, shaken, and scared.

18.     Jane did not report the sexual assault to anyone at her school at that time because she was embarrassed, confused, and feared that School Officials would not believe her.

<u>October 27, 2017 – Sexual Assault by J.C.</u>

19.     A few days later, on or about the afternoon of October 27, 2017, another older male student, J.C., stopped Jane in the hallway as she was leaving the girls' bathroom. J.C. asked her to have sex, because, upon information and belief, he believed that she had had sex with A.C. previously. Jane was shocked and started walking away. J.C. grabbed her tightly by the arm and forcibly pulled her into the adjacent boys' bathroom.

20.     J.C. assaulted Jane by forcing her to perform oral sex on him as she was choking, trembling, crying, and repeatedly saying "No." She felt like she was going to faint. After he left, Jane exited the bathroom alone, humiliated and shaken.

21.     One of her friends, C.S., saw Jane crying at the school "pep rally" that day and asked her why, but she could not bring herself to tell him what happened.

22.     At the time, Jane did not report the sexual assault by J.C. because she did not think the School Officials would believe her. She was confused, hurt, and humiliated.

<u>November 6, 2017 – Sexual Assault by E.H.</u>

23.     On or about November 6, 2017, an older male student whom Jane had never met, E.H., asked her if she could meet him in the boys' bathroom after school. She said "No." That

5

same afternoon, A.C. and J.C., her first two attackers, also asked Jane if she would meet them in the boys' bathroom after school. Again, she said "No."

24.     Late that day, E.H. followed Jane into the girls' bathroom. Jane stated she did not want anything to do with him. E.H. cornered her and demanded oral sex, which she refused. E.H. then sexually assaulted her by forcibly penetrating her vaginally without a condom. E.H. only stopped when another student, J.M., called to him to come out. E.H. stepped out and then came back into the bathroom and said to Jane, "Why would you do it with [A.C.] and [J.C.] and not do it with me?" Jane repeatedly refused to do anything with him and ultimately fought her way out of the bathroom.

25.     Afterwards, Jane walked home crying. During her walk home, she encountered three of her friends C.S., C, and H.O., and told them what had happened. Her friends told her that if she did not tell her mother or the school, they would report it to the school the next day. That night, Jane told her friend E.F. by phone what had happened, but she did not tell her mother because she felt scared and ashamed.

### *Defendant School Board Was Deliberately Indifferent to Jane's Sexual Harassment*

<u>November 7, 2017 – Report to School Officials & Their Inadequate Investigation</u>

26.     On or about the morning of November 7, 2017, Jane's friends E.F., C.S., and H.O. encouraged her to come with them to report the sexual harassment to the School Officials, even though Jane was concerned that the School Officials would not believe her.

27.     Despite her fears, before her first class (English) began that morning, Jane told her English teacher that three students had sexually attacked her on separate occasions. She identified the assailants to her teacher. A.C., the first attacker, was a student in her English class, and when class began, the teacher ensured that A.C. was not sitting near Jane.

28.     Upon information and belief, at that time, the English teacher did not take any additional action to address the matter or report what Jane told her to any School Official.

29.     Upon information and belief, that same morning of November 7, three of Jane's friends – C.S., E.F. and H.O. – reported the sexual assaults of Jane to Principal Ja Marv Dunn and to a school security guard.

30.     While in her English class, Jane was called to the main office and met with Assistant Principal Mimose Morgan-Rose, who asked Jane about her friends' report that she had been sexually assaulted by three students.

31.     Several minutes after Jane had begun to describe the attacks, Assistant Principal Morgan-Rose told Jane that she would "have to repeat the whole story again" to Officer Jules Etienne, a school resource officer[3] who had just arrived.

32.     Upon information and belief, Officer Etienne was not trained and/or authorized by School Board policy or procedures to question alleged victims of child sexual abuse or rape.

33.     Neither any School Official nor Officer Etienne notified Jane's mother at that time about the allegations of multiple sexual assaults, in violation of Fla. Stat. §1006.147(4)(i).[4] School Officials did not refer Jane's allegations of multiple sexual assaults on school property to a law enforcement agency until months later, in violation of Fla. Stat. §§ 1006.147(4)(i) and 1006.13(4)(a).[5]

---

[3] School resource officers, sometimes called school police officers, are employees of the School Board and commissioned by Superintendent Carvalho.  They have duties in accordance with School Board Policy No. 8480.

[4] A school district policy must include "[a] procedure for providing immediate notification to the parents of a victim of bullying or harassment and the parents of the perpetrator of an act of bullying or harassment, as well as notification to all local agencies where criminal charges may be pursued against the perpetrator."

[5] "Each district school board shall enter into agreements with the county sheriff's office and local police department specifying guidelines for ensuring that acts that pose a serious threat to school safety, whether committed by a student or adult, are reported to a law enforcement agency."

34.     Assistant Principal Morgan-Rose left Jane alone in her office with Officer Etienne, permitting him, an adult male whom Jane did not know, to interrogate Jane about the sexual assaults without Jane's mother or anyone else present.

35.     Jane was in Assistant Principal Morgan-Rose's office alone with Officer Etienne from approximately 7:30 A.M. until approximately 10:40 A.M being questioned about the details of the assaults. Although deeply humiliated and shaken, Jane tried to stay calm while writing a statement of the attacks requested by Officer Etienne ("Statement").

36.     The Statement included details describing the bullying behavior that constituted sexual harassment, including the multiple sexual assaults.

37.     After Jane told Officer Etienne that the Statement was complete, Officer Etienne repeatedly asked her why she was in the bathroom during each of the three sexual assaults, suggesting that Jane was responsible. She told him that in each instance she did not want to be in the bathroom.

38.     Officer Etienne stated that he did not understand what she was saying, and that he could not help her if she did not explain why she was in the bathroom with her assailants.

39.     At approximately 10:40 A.M., as he concluded the interview, Officer Etienne told Jane that they "had to" keep her separated from A.C., J.C., and E.H. at school. Jane told him that A.C. was in her third class that day. After their meeting, Officer Etienne sent Jane to speak with a school counselor, who checked Jane's grades and student conduct records and advised her of the possibility that she had been exposed to sexually transmitted infections.

40.     Neither the English teacher, Officer Etienne, the school counselor, nor any School Official provided any information to Jane about her rights under Title IX, how to contact the School District's Title IX Coordinator, how to file a report with law enforcement agencies, or how

to obtain academic accommodations and support services to ensure her equal access to educational opportunities and benefits despite the traumatic events that she had experienced. While Officer Etienne told Jane that the school would "ha[ve] to" separate her from A.C., J.C., and E.H., neither he, the school counselor, nor any School Official informed Jane how changes would be made to her school environment or what changes would be made to anyone's class schedule to ensure that she was safe and protected in school, violating Fla. Stat. §1006.13 and Miami-Dade County Public Schools Code of Student Conduct.

41.     Still no School Official had attempted to contact Mary Doe, Jane's mother.

42.     The school counselor then gave Jane a pass to return to her regularly scheduled classes that day. Jane missed most of her first (English) and second (Math) classes that day due to the questioning by Officer Etienne.

43.     Upon leaving the school counselor's office, Jane went to find her Math teacher to explain why she had missed class that day. She found her Math teacher at lunch with a second school counselor. Jane explained to the Math teacher and the second school counselor why she had missed class and explained that A.C., J.C., and E.H. had sexually assaulted her.

44.     Neither the Math teacher nor the second counselor asked whether Jane's mother had been contacted, or took any other action including providing information to Jane about her rights under Title IX, the School District's Title IX Coordinator, how to file a report with law enforcement, or how to obtain academic accommodations and support services to help her in school.

45.     Jane proceeded to her next class, where A.C., her first attacker, was present. She was, accordingly, forced to endure the presence of one of her attackers despite the School Officials'

promise that they would keep him away from her and despite her telling Officer Etienne that A.C. was in that class with her.

46.     Later that same day, when Jane was in her fourth class of the day, a security guard unexpectedly arrived to escort her back to the main office. When she arrived in the main office, Officer Etienne and two different School Officials – Assistant Principal Rhonda Gaines and Vice Principal Andy Harrison – were present. She also saw two of her assailants in the main office and did not want to look at or talk to them as she passed by.

47.     Incredibly, School Officials still had not informed Jane's mother about the reported assaults, in violation of Fla. Stat. § 1006.147.

48.     Officer Etienne told Jane to go to Assistant Principal Morgan-Rose's office so that Officer Etienne could talk to Jane alone again about her Statement.

49.     Inside Assistant Principal Morgan-Rose's office, Officer Etienne immediately sought to coerce Jane into changing her Statement. He told her that she needed to add to the Statement that she had "participated in all of this." He said, "If you say you were not forced, then all of this will just go away and you won't have to worry about it anymore. Your mother will know but we won't have to look more into it."

50.     Jane was upset, alone, exhausted, and most of all wanted Officer Etienne's questioning to stop. She was also concerned about burdening her mother, who was caring for a new baby.

51.     Without an opportunity to obtain adult or parental advice, and without knowledge of the ramifications, Jane agreed to add to the Statement that she was a "willing participant to all of this." Officer Etienne was not satisfied with Jane adding "willing participant to all of this,"

telling her that he did not like the way she wrote it because it did not sound like it was her "own words." She then added, "I wasn't really forced to do this." ("Amended Statement").

52.     Officer Etienne took the Amended Statement and escorted Jane to another room to wait for Assistant Principal Gaines.

53.     Jane saw Assistant Principal Gaines was meeting with two of her assailants. After her assailants left, Assistant Principal Gaines told Jane to come into her office. Without having interviewed Jane at all, Assistant Principal Gaines told Jane that her statement was the same as those of her three assailants. Assistant Principal Gaines then told Jane that she was suspended along with her assailants because they had all engaged in "sexual misconduct." Jane was shocked and confused.

54.     Assistant Principal Gaines did not attempt to learn or understand Jane's "side of the story" or to determine for herself whether Jane had been bullied or victimized in any way, or provide any information to Jane about her rights under Title IX, the School District's Title IX Coordinator, how to file a report with law enforcement agencies, or how to obtain academic accommodations and support services to help her in school.

55.     Only after Assistant Principal Gaines had decided that Jane should be suspended did she tell Jane to call her mother and tell her to come to the school. She also told Jane not to tell her mother what had happened because Assistant Principal Gaines would be the one to inform her mother.

56.     At approximately 2:47 P.M. that same day on November 7, after Jane's mother was contacted and while Jane waited in the main office for her mother to arrive, Jane texted her mother to say that she was told to say that she was not forced to have sexual relations. In her text messages,

Jane also told her mother that she felt like she had done something wrong even though she knew she had not.

57.    Upon her mother's arrival, Jane, her mother, Officer Etienne, and Assistant Principal Gaines had a meeting, during which Assistant Principal Gaines asked Jane if she had "finally admitted" that she was not forced to do the sex acts because of "the video."

58.    Jane became alarmed, started crying, and asked, "What video?" Officer Etienne said, "I deleted it [the video]." Jane was asked to leave the room as Assistant Principal Gaines and Officer Etienne continued speaking with her mother in private, seeking her agreement that her daughter had engaged in consensual sexual activity.

59.    Assistant Principal Gaines lied to Jane's mother by telling her there was a video that contained evidence of consensual sexual activity, and that this video[6] was why Jane had come forward to report what had happened.

60.    Assistant Principal Gaines told Jane and her mother that Jane would be "suspended" at an off-campus facility due to consensual sexual misconduct.

61.    Upon information and belief, the perpetrators were not disciplined for their bullying constituting sexual harassment, including sexual assaults, of Jane, in violation of  Fla. Stat. §. 1006.147 and School Board Policy 5517.01. The boys were only disciplined for consensual "sexual misconduct," for which Jane was also disciplined.

62.    Upon information and belief, Jane and her perpetrators were assigned to the same off-campus facility for supposed consensual sexual misconduct during their suspension from school.

---

[6] The Miami Dade County State Attorney's investigation, which took place months later, did not uncover any evidence of any video.

63.     No School Official ever performed an adequate, reliable, and impartial investigation of the allegations of multiple sexual assaults of Jane.

64.     No School Official took any action to protect Jane and other students on November 7 or thereafter (should she have returned to Carol City) from the offenders, in violation of Fla. Stat. § 1006.13 and the Miami-Dade County Public Schools Code of Student Conduct.[7]

65.     Upon information and belief, School Officials did not take adequate action to prevent the recurrence of harassment or bullying by the same offenders of other students, in violation of Fla. Stat. § 1006.13.

66.     Upon information and belief, no School Officials reported the allegation of multiple sexual assaults to the School District's Title IX Coordinator, if one existed at the time.

67.     No School Officials immediately referred Jane's allegations to a law enforcement agency for investigation, nor told Jane or her mother that they had a right to ask a law enforcement agency to investigate, in violation of Fla. Stat. § 1006.147.

68.     No School Officials referred Jane for counseling, in violation of Fla. Stat. § 1006.147.

69.     At the time Jane gave her Statement and was coerced into writing the Amended Statement, no School Official recommended or referred Jane to receive medical treatment at a hospital or rape treatment center.

70.     No School Official referred Jane to the Child Advocacy Center operated by Kristi House, a non-profit organization responsible for providing counseling to child sexual abuse victims in Miami-Dade County.[8] Kristi House partners with the State Attorney's Office Sexual

---

[7] Code of Student Conduct – Secondary, School Board of Miami-Dade County, 2014-2015, at 38.
[8] Kristi House was founded in Miami in 1995 based on the U.S. Department of Justice best practices model of Children's Advocacy Centers. Kristi House is among the approximately 800 Children's Advocacy Centers in the country. Clients comes to Kristi House via a referral system built over the past two decades

Battery/Child Abuse Unit, which is designed to interview victims like Jane in a non-threatening manner and to present the child's side of the case for prosecution of the offender(s). As a result, the Sexual Battery/Child Abuse Unit never investigated Jane's case.

71.     Jane and her mother erroneously believed that because Jane had been disciplined, School Officials had conducted a full and proper investigation of the matter. They were never informed that they could report the allegations to the School District Office of Civil Rights Compliance (CRC)[9] to investigate Jane's report of multiple sexual assaults. Their failure to provide Jane and her mother this information violated the School Board Policies addressing bullying, harassment, discrimination, dating violence and abuse complaint procedures – Policies 5517,[10] 5517.01,[11] 5517.02[12] and 5517.03[13]

72.     Upon information and belief, Defendants provide inadequate training to employees about Title IX.

73.     Defendants are charged with processing complaints according to federal agency procedures, which includes the U.S. Department of Education's regulations and guidance on Title IX and sexual harassment.

74.     Defendants did not apply the Department of Education's regulations and guidance standards because they failed to: provide a prompt and equitable grievance process; conduct an adequate, reliable, and impartial investigation; and provide interim measures and academic accommodations to ensure that Jane continued to have equal access to educational opportunities.

---

of law enforcement, schools, the Department of Children and Families, the University of Miami Child Protection Team, Guardians ad Litem, Rape Treatment Centers and the State Attorney's Office. These agencies make up the Multi-Disciplinary Team (MDT) of the Child Advocacy Center.
[9] Code of Student Conduct – Secondary, School Board of Miami-Dade County, 2014-2015, at 30 n. 1.
[10] Defendant School Board Policy on Anti -Discrimination/Harassment.
[11] Defendant School Board Policy on Bullying and Harassment.
[12] Defendant School Board Policy on Anti-Discrimination/Harassment Complaint Procedures for Students.
[13] Defendant School Board Policy on Dating Violence or Abuse.

75. Also, contrary to School Board Policies 5517, 5517.01, 5517.02, and 5517.03:

a. No School Official ever communicated to Jane or her mother the outcome of any adequate school-based investigation in writing or otherwise.

b. No School Official or other employee of the School District ever met "with [Jane and/or her mother] to ascertain the facts pertinent to the allegations."

c. Upon information and belief, no School Official or other employee of the School District "[met] with all the available witnesses identified by [Jane], individually and confidentially, nor ask[ed] them to make statements orally and in writing regarding the alleged facts that form the basis of the complaint."

d. Upon information and belief no School Official or other employee of the School District met with all the available witnesses who would have been identified by Jane had the School District conducted an adequate, impartial, and reliable investigation.

e. Upon information and belief, no School Official or other employee of the School District documented "all reports and interventions on the appropriate student case management forms within ten (10) workdays."

f. Upon information and belief, no School Official or other employee of the School District reported the outcome of any investigation to the CRC.

g. No School Official or other employee of the School District provided Jane or her mother with a copy of School Board Policies 5517, 5517.01, 5517.02, and 5517.03.

76.     November 7 was the last date that Jane attended school at Carol City.

   November 8, 2017 to February 23, 2018 – Jane's Absence from School

77.     After experiencing severe, pervasive, and objectively offensive sexual harassment, , Jane was afraid to return to Carol City, as School Officials and School District employees did not offer any accommodations to keep her safe in school. The mental and physical distress suffered by Jane—including humiliation, fear of rumors, repeated sexual harassment, including sexual assaults, and retaliation—kept Jane from returning to Carol City.

78.     On or about the morning of November 9, 2017, a School Official told Jane's mother to come to the school so that they could give her a written notice that Jane was suspended to an off-campus facility for five days due to "sexual misconduct."

79.     On or about the evening of November 9, 2017, two school resource officers (not Officer Etienne) came to Jane's home, interviewed Jane and her mother, and informed them that one or more of Jane's attackers may have exposed her to the human immunodeficiency virus (HIV) and/or gonorrhea. Jane was advised to go immediately to a Jackson Memorial Hospital's rape treatment center to get tested and treated for HIV exposure.[14]

80.     Jane immediately sought treatment that evening at Jackson Memorial Hospital, escorted by the school resource officers.

81.     Later that night, an employee of Jackson Memorial Hospital who had interviewed Jane earlier that evening, called Jane's mother to tell her that the Hospital believed Jane had been sexually assaulted, and that they were therefore referring her for intervention at the Kristi House Child Advocacy Center, a not-for-profit treatment center for child victims of sexual abuse.

---

[14] By the time the school resource officers referred her for medical treatment, it had been several days since the last of the assaults occurred on November 6th.

16

82.     The school resource officers who were present at the Hospital that night did not refer the case for investigation by a law enforcement agency, in violation of Fla Stat. § 1006.147.

83.     Jane received periodic medical care and testing to determine if she was infected with HIV for approximately one year following November 9, 2017.

84.     Jane remained at home, absent from school, for the remainder of the semester and halfway through the next quarter until on or about February 23, 2018—more than three months after she first reported her sexual harassment and multiple sexual assaults.  Only after more than three months did School District employees finally help her to transfer to another school, following her mother's repeated requests for a transfer.

85.     From November 9 through approximately December 21, 2017, no School Official inquired about Jane's condition or emotional, physical, or educational needs, despite her chronic absence and their awareness of the allegations immediately preceding her absence.

86.     In violation of Fla. Stat. § 1003.26, which governs enforcement of school attendance in public K-12 education:

    a.     No School Official or School District employee contacted Jane to determine the reason for each absence.

    b.     No School Official or School District employee referred Jane's mother to the "child study team" to identify remedies for Jane's pattern of absences.

    c.     Upon information and belief, no School Official or School District employee referred Jane's absences to Defendant Carvalho's office.  And if a School Official or School District employee referred Jane's pattern of absences to Defendant Carvalho's office, his office took no action on such referral(s).

      d.     No School Official or School District employee enforced or took any action to ensure Jane could attend high school until on or about February 23, 2018.

      e.     No School Official or School District employee provided Jane an opportunity to make up assigned work or avoid an academic penalty.

87.     On or about December 21, 2017, Assistant Principal Gaines called Jane's mother to tell her that Jane was deemed truant from school. She offered no help to the family.

88.     On or about January 16, 2018, Jane's mother went to Carol City to try to sign Jane up for homeschool or transfer her to another school because Jane did not feel safe at Carol City. Assistant Principal Gaines tried to convince Jane's mother to send Jane back to Carol City, but provided no plan to protect Jane if she returned there. Accordingly, Jane's mother did not believe Jane would be safe there and continued to ask for a transfer.

89.     On or about that same day, Jane's mother spoke to a Carol City counselor who said she would send the transfer request form to the School District Regional Office for approval. However, no one ever followed up with Jane's mother about the transfer request.

90.     It was not until that same day, on or around January 16, 2018, that Assistant Principal Gaines gave Jane's mother at her request, a copy of Jane's original Statement to Officer Etienne on November 7, 2017.  The Statement did not include the additional language that Jane was coerced into adding to the Amended Statement.

91.     In late January 2018, with the assistance of Jane's therapist from Kristi House, Jane's mother went to the Regional Office again to try to get Jane transferred to a new school, but no one at the School District Regional Office helped her.  Meanwhile, Jane was still not in school.

92.     Jane's mother subsequently contacted several press outlets and attorneys to get help for her daughter.

93.     Channel 7 WSVN responded to Jane's mother and agreed to investigate the circumstances of the case.

94.     On or about January 31, 2018, upon information and belief, a representative of Channel 7 contacted the School Board, Carvalho and/or a School District employee for comment about a story they would broadcast about the sexual assaults.

95.     On or about January 31, 2018, Assistant Principal Gaines finally reached out to Jane's mother by telephone to find out why Jane was absent from school and to say that she would help Jane make up her school assignments.

96.     On February 1, 2018, Assistant Principal Gaines emailed Jane's mother with a link to a website that ostensibly contained her World History assignments, but no other assignments. Neither Assistant Principal Gaines, nor any other School Official or District Administrator, provided instructions on how to access the assignments, and Jane's mother did not own a computer. Nothing else was offered by Defendants to fulfill their educational obligations to Jane beyond that single, belated gesture.

97.     In early February 2018, Channel 7 broadcasted a story about the sexual harassment Jane had experienced.

98.     Upon information and belief, it was not until around February 14, 2018, over three months after reports to School Officials and School District employees that Jane had been sexually harassed, including sexually assaulted multiple times, that Defendant School Board belatedly referred Jane's case to the State Attorney's office for criminal investigation, violating Fla. Stat. §§ 1006.13 and 1006.147.

99.     When the Defendant School Board finally reported Jane's case for criminal investigation, rather than referring the case to the Sexual Battery/Child Sexual Abuse Unit, Defendant School Board inappropriately referred Jane's case to the Juvenile Unit of the State Attorney's Office, where she was interrogated by prosecutors who typically investigate juvenile offenses in non-sexual crimes.

100.     On or about February 22, 2018, Jane and her mother began an administrative process to expunge the record of Jane's suspension on the basis that the assaults were not consensual, and that Defendant School Board's investigation of the sexual harassment, including sexual assaults, was inadequate and improperly conducted.

101.     On February 23, 2018, Jane's mother and an attorney for Defendant School Board met with the School District Regional Superintendent who finally assisted with Jane's transfer and transportation to a public school in a different neighborhood from her home.

102.     On or about March 2, 2018, Jane filed a complaint with the Miami Dade County School Police's internal affairs department regarding Officer Etienne's intimidating and coercive conduct on November 7th.

103.     Defendant School Board refused to grant Jane's repeated requests for expungement of the record of her suspension stating that it could not expunge the record until the criminal investigation and the Miami-Dade School Police's internal investigation of Officer Etienne were completed.

### Jane Was Harmed by Defendant School Board's
### Deliberate Indifference and Retaliatory Actions

104.     Jane, who had been a diligent student prior to the sexual harassment, suffered physical and emotional distress and was harmed academically. She became afraid to return to school and to walk around her neighborhood for fear of seeing the attackers and their friends. For

20

more than three months, from November 8, 2017 through about February 26, 2018, Jane remained home – often alone – receiving "F" grades on her assignments and ultimately failing every single class during a grading period, with no attempt by Defendants to bring her back to school to continue her education.

105.    Despite Jane's and her mother's requests, Defendant School Board, through School Officials and District employees, affirmatively refused to help Jane make up the graded work assignments that she missed during her absence from November 8, 2017 through approximately February 26, 2018, or provide any avenues for alternative instruction.

106.    Jane's written requests to Defendant School Board's attorney for compensatory services (i.e., tutoring to make up for the instruction she missed, an opportunity to be graded on the work that she missed, and counseling) were denied.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF TITLE IX AS TO DEFENDANT
### MIAMI-DADE COUNTY SCHOOL BOARD (20 U.S.C. § 1681, *et seq*.)
### (Deliberate Indifference to Sexual Harassment)

107.    Jane incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

108.    Title IX of the Education Amendments of 1972, provides, with limited exceptions, that "[n]o person in the United States shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

109.    At all relevant times the School Board exercised substantial control over the sexual harassers who at all relevant times were students enrolled in the School District.

110.   Title IX damages liability arises when school officials with authority to take corrective action have actual knowledge of student-on-student sexual harassment and their response is deliberately indifferent, i.e., clearly unreasonable under the known circumstances.

111.   The sexual harassment, including multiple sexual assaults, suffered by Jane was so severe, pervasive, and objectively offensive that it deprived her of equal access to the educational opportunities and benefits provided by Defendant School Board.

112.   Beginning November 7, 2017, School District officials with authority to take corrective measures in response to student-on-student sexual harassment at Carol City, including Principal Dunn, Assistant Principal Morgan-Rose, and Assistant Principal Gaines, acted with deliberate indifference to the severe, pervasive, and objectively offensive sexual harassment, including multiple sexual assaults, that Jane suffered.

113.   The purported investigation conducted by School Officials and Officer Etienne fell significantly short of an impartial, reliable, and adequate investigation.

a.   They failed to interview relevant witnesses with corroborating information, including other students and school employees.

b.   Officer Etienne cozened and coerced Jane into changing her statement to indicate, falsely, that she was a "willing participant" in her sexual assaults and, because he did not believe it sounded like Jane's "own words," to add that she "wasn't really forced to do this," so as to relieve him and School Officials of the burden of having to conduct a full investigation of Jane's claims and take proper disciplinary and rehabilitative actions.

        c.      The conclusion of School Officials that the sexual assaults were consensual essentially, and unfairly, relied only on crediting the statements of Jane's assailants.

114.    Defendant School Board failed to refer the allegations to the School District Civil Rights Compliance Office; failed to refer Jane for counseling; failed to keep Jane's perpetrators away from her in school, causing Jane to feel unsafe in school and not return; failed to provide instruction or instructional materials for Jane while she was absent for more than three months following the assaults; failed to contact Jane's mother to determine the reason for Jane's pattern of absences following the final assault; failed to refer Jane's case to a child study team to determine remedies for her pattern of nonattendance in school following the final assault; failed to provide opportunities for Jane to make up the assigned work she missed and avoid an academic penalty in violation of Fla Stat. § 1003.26, and otherwise was clearly unreasonable in light of the known circumstances.

115.    As a direct and proximate result of Defendant School Board's deliberate indifference, Jane has suffered physical and psychological trauma, suffered emotional distress and anxiety, feared being in the school building, missed months of instruction and contact with her peers, suffered a significant drop in her grades disqualifying her from taking certain advanced courses and from consideration for a magnet program at a new school because of her lower grades, and suffered damage to her reputation and standing in the community.  Jane was thus excluded from participating in and denied the benefits of Defendant School Board's education program as a result of its deliberate indifference to the sexual harassment she suffered.

**COUNT II**
**VIOLATION OF TITLE IX**
**AS TO DEFENDANT MIAMI-DADE COUNTY SCHOOL BOARD (20 U.S.C. § 1681,**
**et seq.)**
**(Retaliation under Title IX)**

116.    Jane incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

117.    After Jane wrote her Statement in the presence of the Officer Etienne detailing the sexual harassment she experienced, upon information or belief, Assistant Principal Gaines, Assistant Principal Morgan-Rose, and/or Principal Ja Marv Dunn knew of, or coordinated, Jane's meeting with Officer Etienne on a second occasion, during which Officer Etienne coerced her into recanting the forced and nonconsensual nature of the incidents by changing the Statement to say that she was a "willing participant" in her sexual assaults and, because he did not believe it sounded like Jane's "own words," to add that she "wasn't really forced to do this."

118.    Defendant School Board retaliated against Jane for reporting the allegations of sexual harassment, including multiple sexual assaults by: a) suspending her from school after she reported the sexual assaults; b) failing to refer her complaint for investigation by the CRC or for immediate criminal investigation; c) treating her like a perpetrator not a victim; d) failing to tell Jane or her mother of their rights under state law, School Board policy, and Title IX; e) failing to refer Jane for medical treatment at a rape treatment center within a reasonable timeframe; f) failing to protect Jane from further harassment by the perpetrators; g) failing to contact Jane and provide her with instruction or other accommodations when she was absent for more than three months of school; h) failing to transfer her to another school with a safer environment away from the perpetrators where she could finish her education; and i) otherwise failing to comply with its responsibilities as mandated by Title IX.

**COUNT III**
**SECTION 1983 LIABILITY AGAINST THE SCHOOL BOARD**
**Violation of the Right to Equal Protection, Brought Under 42 U.S.C. § 1983**
**(Failure to Train)**

119.  Jane incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

120.  Defendant School Board was at all times acting under color of law, and had a duty – but failed – to train School District employees, including School Officials, on the School Board's policies for reporting and addressing sexual harassment of students like Jane.

121.  Defendant School Board had a custom of not adequately training School District employees, including the School Officials, on a) the identity of the School District's Title IX coordinator; b) their duty under both Title IX and School Board policies to notify the Title IX coordinator of all student-on-student harassment; c) their duty to adequately, reliable, and impartially investigate all reports of sexual harassment independently of law enforcement agencies; d) how to conduct adequate, reliable, and impartial investigations; and/or e) how to provide effective academic accommodations and support services to student victims of sexual harassment.

122.  Defendant School Board's custom of failing to train School District employees, including the School Officials, on how to address sexual harassment, including peer bullying constituting sexual harassment, in light of the obvious need and risks of not doing so, amounted to deliberate indifference to the constitutional rights of students, such as Jane.

   a.     The U.S. Department of Education's Office for Civil Rights has
          recognized the need for adequate training and responses to sexual

        harassment in schools and has issued guidance for public school districts and universities in 1997, 2001, 2011, 2014, and 2017 on this issue.[15]

b.     Student-on-student sexual harassment occurs frequently in the public high school context, including in the School District. Defendant School Board reported to the Florida Department of Education that there were 170, 132 and 194 incidents of sexual harassment, sexual assault, sexual battery, and sexual offenses during the 2014-15, 2015-16 and 2016-17 school years, respectively, in the School District.[16]

c.     On at least four occasions between 2013 and 2017, Defendant School Board was put on notice, by the filing of state and federal litigation against them by student plaintiffs, of their deliberate indifference to, and failure to train School District employees on, peer sexual harassment in the School District.

d.     During the 2017-2018 school year, a minor male student, X.X., and his mother repeatedly reported to his school administration at Young Men's Preparatory Academy and to a high-ranking school District employee regarding ongoing peer bullying constituting sexual harassment. Not only

---

[15] For almost two decades, the Department of Education has issued multiple guidance documents explicitly stating the need for schools to train their employees on addressing student-on-student sex-based harassment. U.S. Dep't of Educ., Office for Civil Rights (ED OCR), *Q&A on Campus Sexual Misconduct* 4 (Sept. 22, 2017); ED OCR, *Questions and Answers on Title IX and Sexual Violence* (Apr. 29, 2014); ED OCR, *Dear Colleague Letter: Sexual Violence* (Apr. 4, 2011); ED OCR, *Dear Colleague Letter: Harassment and Bullying* (Oct. 26, 2010); ED OCR, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, and Third Parties* (Jan. 19, 2001); ED OCR, *Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, 62 Fed. Reg. 12034 (Mar. 1997).

[16] Each school year all schools are required to report to the School District all incidents of sexual offenses, sexual harassment, sexual assault, and sexual battery. School Districts are required to report that data to the Florida Department of Education which collects and retains it in the School Environmental Safety Incident Reporting (SESIR) System.

were Defendant's agents deliberately indifferent to the calls for help by
X.X. and his mother, but they also failed to recognize the need to
investigate the bullying and to train its employees. X.X. reported that he
had been sexually assaulted repeatedly by a male student on the property
Young Men's Preparatory Academy.

123.   Defendant School Board's failure to provide adequate training to employees
(including School Officials and other School District employees), represents a custom that actually
caused injury to Jane. Defendant's failure to provide adequate training and the violation of Jane's
constitutional rights is evidenced by the following:

a.   Upon information and belief, Defendant School Board lacks adequate
training materials and/or programs for employees on recognizing,
preventing and addressing sexual harassment promptly and equitably;

b.   School Officials' failure to report to the Florida Department of Children
and Families the alleged sexual harassment within a reasonable timeframe;

c.   School Officials' failure to immediately report the sexual assaults to law
enforcement agencies or to inform Jane and her mother of the option of
reporting the sexual assaults to law enforcement;

d.   School Officials' failure to inform Jane of her rights under Title IX and of
the identity of the Title IX Coordinator.

e.   School Officials' failure to perform an adequate, reliable, and impartial
investigation of Jane's allegations;

f.   School Officials' failure to immediately notify Jane's mother of Jane's
allegations;

g.    School Officials' failure to refer Jane for counseling;

h.    School Officials' disciplinary action against Jane before conducting an adequate, reliable, and impartial investigation;

i.    Upon information and belief, School Officials' failure to report Jane's allegations to the Civil Rights Compliance Office;

j.    School Officials' failure to adequately document and report Jane's allegations as required by Defendant School Board's policies;

k.    School Officials' failure take appropriate actions to protect Jane;

124.    Defendant School Board was aware of its legal obligations pursuant to Title IX, state policies, and District policies to appropriately train employees on how to recognize, prevent, and address reports of bullying and sexual harassment to protect students' constitutional rights.

125.    Defendant School Board's failure to train employees was unreasonable and amounted to deliberate indifference.

126.    As a direct and proximate result of Defendant School Board's actions and inactions and violations of Jane's clearly established constitutional rights, Jane sustained and continues to sustain injuries, including emotional distress, psychological trauma, and academic harms, for which she is entitled to be compensated.

**COUNT IV**
**Supplemental Claim**
**NEGLIGENCE AS TO DEFENDANTS MIAMI-DADE COUNTY SCHOOL BOARD**
**AND CARVALHO**

127.    Jane incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

128.    This is a supplemental claim brought pursuant to 28 U.S.C. § 1367 for negligence (as permitted by Fla. Stat. §768.28(9)(a)) against Defendants School Board and Superintendent

28

Carvalho, for injuries suffered by Jane as a result of the actions and inactions of Principal Dunn, Assistant Principal Gaines, Assistant Principal Morgan-Rose, Officer Etienne and other School District employees who were acting in the course and scope of their employment.

129.   Jane provided a §768 notice to the School Board on April 11, 2018, thus fulfilling a precondition for filing a claim for negligence against the School Board.

130.   While Jane was enrolled at Carol City, Defendant School Board, Defendant Carvalho, the School Officials, and their agents were entrusted by law and policy with the care of Jane as a student at Carol City and had a duty to properly supervise student activity on school property, to enforce Defendant School Board's policy on bullying, and to ensure that Jane had access to her class work and was educated.

131.   Defendant School Board also had a duty to promptly and reasonably investigate complaints of bullying and sexual harassment, including sexual assault, and to provide a reasonably safe environment for students to attend school or otherwise continue their education, without abatement.

132.   As detailed above, Jane was repeatedly subjected to bullying constituting sexual harassment, including sexual assaults, by other students who attended Carol City.

133.   As detailed above, Jane and three other classmates reported the bullying constituting sexual harassment, including sexual assaults, to School Officials both orally and in writing. Indeed, Jane's Statement clearly indicated severe and pervasive bullying and sexual harassment, including sexual assaults, whether a School Official believed that the penetrative sexual acts constituted sexual misconduct .

134.   Defendants School Board and Carvalho, by and through the actions and nonactions of employees and agents of the School District and Defendant School Board, including the School

Officials, breached the duty of care that they owed to Jane in the manner that they investigated the reports of bullying and sexual harassment, including sexual assaults, in how they mistreated Jane after she made the report, and in how they neglected her education and recovery from the trauma thereafter. Specifically, they breached their duty of care by the following (without limitation):

    a.    Failing to properly, reasonably and equitably investigate the reports of Jane's sexual assaults;

    b.    Failing to immediately inform Jane's mother of the reported assaults and to have her present during two interviews of her 14-year-old child by the school resource officer;

    c.    Cozening and coercing Jane into adding false assertions to her written Statement by using false assurances;

    d.    Disciplining Jane for supposedly "consensual" sexual misconduct;

    e.    Ignoring all evidence of bullying and lack of consent and mental distress in her Statement, her demeanor and the circumstances;

    f.    Engaging in bullying and coercion themselves with the false story of a video of the attacks;

    g.    Upon information and belief, failing to refer the allegations to the School District CRC;

    h.    Failing to immediately refer the allegations to local law enforcement;

    i.    Failing to refer Jane for appropriate medical treatment and testing within a reasonable timeframe;

    j.    Failing to refer Jane for counseling and/or continuing counseling;

    k.    Failing to provide instructional materials for Jane;

l.   Failing to contact Jane's mother to determine the reason for Jane's pattern of absences and attempt measures to cure;

m.   Failing to refer Jane's case to a child study team to determine remedies for her pattern of nonattendance in school;

n.   Upon information and belief, failing to report Jane's case of a pattern of absences to the appropriate administrators. If Jane's pattern of absences was reported to Defendant Carvalho, his office did not take any action to assist her.

o.   Failing to provide opportunities for Jane to make up the assigned work she missed and not to receive an academic penalty;

p.   Making consideration of Jane's mother's petition for expungement of Jane's suspension contingent upon the completion of a criminal investigation by the State Attorney's Office and of a school police internal affairs investigation of Officer Etienne's conduct.

135.   As a direct and proximate result of Defendant School Board's and Defendant Carvalho's actions and inactions, Jane sustained and continues to sustain injuries, including emotional distress, psychological trauma, and academic harms, for which she is entitled to be compensated.

**COUNT V**
**Supplemental Claim**
**NEGLIGENCE – FAILURE TO TRAIN – AS TO DEFENDANTS SCHOOL BOARD AND CARVALHO**

136.   Jane incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

137.    This is a supplemental claim pursuant to 28 U.S.C. § 1367 for negligence (as permitted by Fla. Stat. §768.28(9)(a)) against Defendants School Board and Carvalho for injuries suffered by Jane as a result of the actions and inactions of the School Officials including Principal Dunn, Assistant Principal Gaines, Assistant Principal Morgan-Rose, Officer Etienne and other School District employees who were acting in the course and scope of their employment.

138.    In October and November 2017, Jane was a student at Carol City, a high school supervised, controlled and operated by Defendants School Board and Carvalho.

139.    As such, Defendants School Board and Carvalho, and their agents were entrusted with the care of Jane and owed a duty to Jane to properly train their employees, agents, and representatives for the investigation and handling of reports involving bullying and sexual harassment, including sexual assault, and the education of students suffering from trauma, especially when inflicted on school property during school hours.

140.    The harm caused to Jane was foreseeable by the Defendants' negligent failure to properly to train their employees about handling reports of bullying and sexual harassment, including sexual assault.

141.    Defendants School Board and Carvalho breached that duty by failing to properly train School Officials including Principal Dunn, Assistant Principal Gaines, Assistant Principal Morgan-Rose, Officer Etienne and other School District employees, as evidenced by the following (without limitation):

        a.    Upon information and belief Defendants' lack of training materials and/or programs for employees on recognizing, preventing and addressing bullying and sexual harassment and properly handling reports of same;

32

b.      Upon information and belief, the School District did not at the time of the allegations cited in this complaint employ a Title IX Coordinator a) whose name was published in posters disseminated at school sites and/or b) coordinated School District-wide training as required under Title IX, among other requirements.

c.      School Officials and other School District employees' failure to immediately report to a law enforcement agency the alleged sexual battery and assault;

d.      School Officials and other School District employees' failure to inform Jane of her rights under Title IX and School Board policies;

e.      School Officials and other School District employees' failure to perform a reasonable investigation of Jane's allegations, including coercing her into recanting her original statement;

f.      School Officials' and other School District employees' failure to immediately notify of Jane's mother of Jane's allegations;

g.      School Officials' and other School District employees' failure to refer Jane for counseling at Kristi House or otherwise;

h.      School Officials and other School District employees' disciplinary action against Jane before conducting a prompt and equitable investigation;

i.      School Officials' and/or other School District employees' failure to report Jane's allegations to the School Board CRC;

     j.       School Officials' and/or other School District employees' failure to adequately document and report Jane's allegations as required under Defendant School Board's policies;

     k.      School Officials and other School District employees' failure take appropriate actions to protect Jane and other students from further bullying and harassment, including assault;

     l.       School Officials' and other School District employees' failure to notify Jane that she had the right to report the allegations to the Miami-Dade Police Department and the CRC; and

     m.     School Officials' and other School District employees' failure to provide intervention, including but not limited to instructional intervention, to Jane in her absence from school;

142.    As a direct and proximate result of Defendants School Board's and Carvalho's actions and inactions, Jane sustained and continues to sustain injuries, including emotional distress, psychological trauma, and academic harms, for which she is entitled to be compensated.

### COUNT VI
### NEGLIGENCE PER SE AS TO DEFENDANTS MIAMI-DADE COUNTY SCHOOL BOARD AND CARVALHO

143.    Jane incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

144.    This is an action for negligence *per se* (as permitted by Fla. Stat. §768.28(9)(a)) against Defendants School Board and Carvalho, for injuries suffered by Jane as a result of the actions and inactions of School Officials' and/or other School District employees who were acting in the course and scope of their employment.

145.     Pursuant to Fla. Stat. §39.201(1)(c), Defendants School Board and Carvalho were required to immediately report the sexual assaults of Jane, a minor child, to the Department of Children and Families and the Miami Dade Police Department and/or the State Attorney's Office.

146.     Defendant School Board did not report the sexual assaults of Jane to any or all of those entities, within a reasonable timeframe.

147.     As a proximate cause of Defendant School Board's violation of Fla. Stat. §39.201(1)(c), Jane suffered and continues to suffer severe physical and emotional distress and academic harms.

**COUNT VII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANTS MIAMI-DADE COUNTY SCHOOL BOARD AND CARVALHO**

148.     Jane incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

149.     This is an action for intentional infliction of severe emotional distress (as permitted by Fla. Stat. §768.28(9)(a)) against Defendants School Board and Carvalho for injuries suffered by Jane as a result of the actions and inactions of School Officials and other School District employees who were acting in the course and scope of their employment.

150.     As detailed above, Defendants School Board and Carvalho, through the actions of School Officials and other School District employees, intentionally and recklessly retaliated against Jane for reporting bullying and sexual harassment. Defendants School Board and Carvalho knew or should have known that emotional distress would likely result from their actions and inactions.

151.     Specifically, Defendants School Board and Carvalho, through the actions School Officials and other School District employees took the following actions (without limitation):

a.   Coercing and cozening Jane to change her statement to falsely state that she was a "willing participant" in her sexual assaults and, because this did not sound like Jane's "own words," to add that she "wasn't really forced to do this";

b.   Disciplining her with the perpetrators for supposed consensual sexual misconduct;

c.   Failing to complete a reasonable and equitable investigation of Jane's allegations;

d.   Failing to refer her complaint for investigation by the CRC or for criminal investigation;

e.   Failing to immediately report her complaint of sexual assaults to the Department of Children and Families;

f.   Failing to tell Jane or her mother of their rights under state law, School Board policy, and Title IX;

g.   Failing to refer Jane for medical treatment at a rape treatment center within a reasonable timeframe;

h.   Failing to protect Jane from further bullying and harassment by the perpetrators or the affiliates;

i.   Failing to contact Jane and provide instruction when she was absent for over three months of school due to her trauma; and/or

j.   Failing to, within a reasonable timeframe,  transfer her to another school with a safer environment away from the perpetrators and their affiliates where she could finish her education.

152.   The conduct of the School Officials in the course of their duties, and Defendants was outrageous; it went beyond all bounds of decency and is odious and intolerable in a civilized community.

153.   As a result of the conduct of the School Officials, in the course of their duties, and Defendants, Jane suffered severe emotional distress.

**WHEREFORE**, Jane respectfully requests judgment in her favor and against Defendants School Board and Carvalho on all counts as follows:

A.   Compensatory damages for Jane's psychological and emotional distress, loss of educational opportunities and benefits, standing in her community, and damages to her reputation and future earnings in an amount to be proved at trial;

B.   Punitive damages;

C.   Injunctive relief;

D.   Interest;

E.   Costs;

F.   Reasonable attorneys' fees for the efforts of undersigned counsel retained to represent her; and

G.   Such other and further relief, including equitable relief, that this Court deems just and proper.

## **JURY DEMAND**

Jane demands a trial by jury.

Dated: January 15, 2019                    Respectfully submitted,


Allison L. Hertog                          BY: /s/ *Lewis F. Murphy*
Florida Bar No. 44155                          Lewis F. Murphy
Making School Work, P.L.                       Florida Bar No. 308455
1550 Madruga Avenue., Suite 333                James Sammataro
Coral Gables, FL 33146                         Florida Bar No. 520292
Telephone: 305-663-9233                        Cristina B. Rodriguez
Email: Allison@MakingSchoolWork.com            Florida Bar No. 639982
                                               Stroock & Stroock & Lavan LLP
                                               200 S. Biscayne Blvd. Suite 3100
                                               Miami, FL  33133
                                               Telephone:  305-789-9300
                                               Email:  lmurphy@stroock.com
                                                       jsammataro@stroock.com
                                                       crodriguez@stroock.com


Alice K. Nelson                                Emily Martin
Florida Bar No. 211771                         *Pro Hac Vice*
Of Counsel                                     Neena Chaudhry
Nelson Law Group                               *Pro Hac Vice*
c/o 14043 Shady Shores Drive                   Shiwali Patel
Tampa, FL 33613                                *Pro Hac Vice*
Telephone: 813-254-5517                        Elizabeth Tang
Email:  alice@nelsonlg.com                     *Pro Hac Vice*
                                               National Women's Law Center
                                               11 Dupont Circle, Suite 800
                                               Washington, D.C. 20036
                                               Telephone: 202-588-5180
                                               Email:  emartin@nwlc.org
                                                       nchaudhry@nwlc.org
                                                       spatel@nwlc.org
                                                       etang@nwlc.org